IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00513-LTB-BNB

ROBERT HAYNES,

       Plaintiff,

v.

CITY OF PUEBLO, et. al.,

       Defendants.

## PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, by and through his attorney, Douglas Gradisar of the law firm GRADISAR, TRECHTER, RIPPERGER, ROTH & CROSHAL, and for his Second Amended Complaint would state the following:

### I. JURISDICTION AND VENUE

1. At all times relevant to this Amended Complaint, Plaintiff was living in Pueblo County, Colorado, while attending college under a basketball scholarship at the Colorado State University, at Pueblo.

2. Defendant, City of Pueblo, is a municipality located within the County of Pueblo, operates a police force within the City of Pueblo, and is responsible for the policies, custom and practices of how the City investigates allegations of unreasonable and excessive use of force by the Pueblo Police Department.

3. Defendant, Jim Billings, was at all times relevant to this compliant, a resident of Pueblo County, and was employed by the City of Pueblo as Chief of Police. He is being sued in his official capacity. Defendant Billings is responsible for the policies, custom and practices of Pueblo Police Officer use of taser/stun guns, is responsible for the policies, custom and practices of how Pueblo Police Officers work together/collaborate in generating all paperwork, reports and affidavits in relation to encounters/arrests with citizens of Pueblo, Colorado, and is responsible, along with Defendant City of Pueblo, for the policies, custom and practices of how the City investigates allegations of unreasonable use of force by the Pueblo Police Department.

4. Defendant, Kenneth Matic, was at all times relevant to this complaint, a resident of Pueblo County, and was employed by the City of Pueblo Police Department.

He is being sued in his individual capacity.

5. Defendant, Richard Reyes, was at all times relevant to this complaint, a resident of Pueblo County, and was employed by the City of Pueblo Police Department. He is being sued in his individual capacity.

6. Defendant, Jason Smith, was at all times relevant to this complaint, a resident of Pueblo County, and was employed by the City of Pueblo Police Department. He is being sued in his individual capacity.

7. Defendant, Charles Bonomelli, was at all times relevant to this complaint, a resident of Pueblo County, and was employed by the City of Pueblo Police Department. He is being sued in his individual capacity.

8. This action is a civil action in which Plaintiff alleges, *inter alia,* deprivation by Defendants of rights guaranteed by the United States Constitution. This Court possess original jurisdiction in this case pursuant to 42 U.S.C. § 1983. This Court may also exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. As Defendants are residents of Pueblo County, Colorado and since this case arises out of Defendants conduct, acts/omissions occurring inside the city limits of Pueblo, Pueblo County, Colorado, venue is appropriate in this Court. See 28 U.S.C. §1391 (b).

10. On April 6, 2006, Plaintiff submitted notice of claim, pursuant to C.R.S. § 24-10-101, *et. seq.*, and gave notice to, *inter alia*, the attorney for the City of Pueblo, the Chief of Police, and Defendants Matic, Reyes, Smith and Bonomelli. Plaintiff has therefore complied with the requirements of Colorado's Governmental Immunity Act. Id.

## I. BACKGROUND FACTS

11. On November 13, 2005, Plaintiff was a patron at an establishment located at 224 S. Union Avenue, Pueblo, CO, 81003, known as "The Highest State".

12. Plaintiff was a member of the local college basketball team for Colorado State University—at Pueblo, and was at the establishment with teammates and a coach.

13. As the establishment was getting ready to close for the evening, the police were summoned to the establishment regarding an unrelated occurrence.

14. When employees of the establishment began clearing patrons, officers from the City of Pueblo Police Department were outside the establishment—having responded to the unrelated occurrence.

15. Plaintiff exited the establishment and walked out onto Union Avenue—a street located immediately in front of the establishment. Plaintiff was looking for his teammates and coach, who had exited the establishment separate and apart from Plaintiff. Once on Union Avenue, Plaintiff began talking with an unknown member of the City of Pueblo Police Department.

16. Suddenly and without provocation, Defendant Reyes approached Plaintiff and without warning or justification, struck Plaintiff in the head/face area. Plaintiff was immediately rendered unconscious, and instantly fell down to the ground. Plaintiff struck his face and head on the ground when he fell.

17. After being rendered unconscious, Plaintiff was not actively aggressive. Nevertheless, on information and belief, members of Pueblo's police force, including though not limited to Defendants Reyes, Smith and Bonomelli then jumped onto Plaintiff's back and pinned Plaintiff on his stomach, face first on the ground, with his arms behind his back.

18. On information and belief, while the officers pinned the unconscious Plaintiff to the ground, face first with his hands behind his back, Defendant Matic then approached and administered multiple and sustained bursts/zaps from a police issued "taser gun" to various areas of Plaintiff's upper rear neck, near the back of Plaintiff's skull and body. At the time Plaintiff was zapped for a sustained duration, multiple times, Plaintiff was not actively resisting. The tasers utilized were issued by the City of Pueblo Police Department.

19. Prior to Plaintiff's encounter with the City of Pueblo Police, the City of Pueblo Police Department's use of tasers had been called into question and reported by Amnesty International. Amnesty International specifically reported on the death of a citizen of Pueblo who died after being tased several times by Pueblo Police while he was handcuffed and in police custody; the Amnesty International report also focused on two occasions where two different men in hospital beds were zapped with tasers by Pueblo Police (one man being zapped twice until he settled down—after having first been zapped three other times while handcuffed before ever reaching the hospital bed), the other reported incident occurring when a man was zapped once after being told by Pueblo Police to be quiet, and when he failed to comply, the Pueblo Police officer placed the taser against the individuals chest and zapped him one time.

20. Upon information and belief, the Pueblo Police officers on scene were stopping and encountering individuals on scene, including Plaintiff, based upon racial considerations and profiling. The profiling of Plaintiff based upon racial considerations deprived Plaintiff of certain rights guaranteed by the United States Constitution, including the Fourteenth (14th) Amendment.

21. The multiple administration of taser "zaps" to the back of Plaintiff's neck, near the back of Plaintiff's skull and body, while he was unconscious, face down with

his arms behind his back, while multiple police officers were on top of him, all while Plaintiff was not actively aggressive, constitutes an unjustified, unreasonable and excessive use of force, in violation of Plaintiff's rights guaranteed under the Fourth (4th) and Fourteenth (14th) Amendments to the United States Constitution.

22. The actions of Defendants Reyes, Smith, Bonomelli and Matic were not "objectively reasonable" in light of the facts and circumstances the police were confronted with at the time of the encounter with Plaintiff.

23. It is a custom, practice or policy of the City of Pueblo to permit police officers to use racial considerations and profiling in investigations and encounters with citizens of Pueblo.

24. It is a custom, practice or policy of the City of Pueblo to permit police officers to use tasers against non-violent citizens who are not actively aggressive, as well as to not train officers in the appropriate constitutional limits on the use of force. It is a well known custom, practice or policy of the City of Pueblo Police Department, through published comments of Defendant Billings, that "necks [are] effective places to deploy Tasers . . . ."

25. On information and belief, after the encounter with Plaintiff, Pueblo Police officers, including though not limited to Defendants Reyes, Smith, Bonomelli and Matic then collaborated and conspired with one another and agreed to intentionally and falsely describe the facts of the incident involving the altercation with Plaintiff and falsely describe the facts leading up to the altercation with the Plaintiff. The officer affidavits and other reports created in relation to the incident with Plaintiff contain these intentionally false factual representations.

26. It is a custom, practice or policy of the City of Pueblo to permit police officers to collaborate/work together when filling out paperwork related to arrests, incidents and/or encounters with the public, which allows police to discuss and collaborate when generating official paperwork relating to arrests, incidents and/or encounters with the public. This custom, practice or policy allows the police to fail to accurately report crucial facts, or fail to accurately report all material facts, and fails to create a complete or accurate picture of the arrest, incident and/or encounter in question.

27. Under this custom, practice or policy, Defendant Reyes, who Plaintiff alleges began the entire encounter at issue here by attacking Plaintiff for no justifiable basis, previously failed to accurately report all pertinent and material facts in relation to arrests Defendant Reyes has made. For example, in 2004, when Defendant Reyes arrested a Ryan Noble Garcia, Defendant Reyes' arrest affidavit reported the arrest occurred after only a "brief struggle" with Mr. Garcia. Defendant Reyes failed to include in this affidavit the fact that Defendant Reyes used a taser during the arrest of Mr. Garcia.

28. Following this custom, practice or policy, the official Pueblo Police account of the encounter with Plaintiff, the affidavits, reports and paperwork created by Pueblo Police officers including though not limited to Defendants Reyes, Smith, Bonomelli and Matic, were factually inaccurate and failed to provide an accurate picture of the encounter/arrest of Plaintiff. When the official police accounts of the encounter with Plaintiff were printed in the Pueblo Chieftain newspaper, numerous members of the public contacted the newspaper, the City of Pueblo Police Department, and the District Attorney's office for Pueblo County, to dispute the published official police account of the encounter with Plaintiff.

29. The actions and conduct of Defendants Smith, Reyes, Bonomelli and Matic, as it relates to the state law claims, demonstrate a willful and wanton disregard to the consequences, or without regard to the rights of others, particularly the Plaintiff. Plaintiff is specifically not seeking exemplary damages based upon allegations of willful or wanton conduct.

30. At all material and relevant times, the individual Defendants were acting within the course and scope of their employment and the City of Pueblo is responsible for the conduct of its employees.

31. At all times relevant to this Complaint Defendant Billings, the Pueblo Police and Defendants Smith, Reyes, Bonomelli and Matic were acting under color of law.

32. Based upon the official published accounts of the Pueblo Police Department's version of the encounter with Plaintiff, Plaintiff was suspended from his basketball activities with the University of Southern Colorado-at Pueblo for one (1) month.

33. After this incident/encounter, Plaintiff no longer felt safe/comfortable residing in Pueblo, Colorado, abandoned plans to relocate his pregnant girl-friend to Pueblo to start his family, and walked away from the full ride scholarship Plaintiff had been awarded at the University of Southern Colorado-at Pueblo. Plaintiff is now enrolled at a university in California and has been force to obtain student loans to finance his education.

## **FIRST CLAIM FOR RELIEF:    ASSAULT**

34. Plaintiff incorporates each and every allegation in paragraphs 1-33 above, into this, his first claim for relief, as if fully stated herein.

35. Defendants Smith, Reyes, Bonomelli and Matic intended to make physical contact with Plaintiff, or intended to place Plaintiff in apprehension of physical contact.

36. Defendants Smith, Reyes, Bonomelli and Matic placed Plaintiff in apprehension of imminent physical contact.

37. These Defendants placed the Plaintiff in apprehension of immediate physical contact.

38. A reasonable police officer in the position of Defendants Smith, Reyes, Bonomelli and Matic's position would have known that such conduct violated clearly established law.

39. As a result of these Defendants conduct, Plaintiff suffered personal injuries and sustained damages.

40. As a direct result of the Defendant Smith, Reyes, Bonomelli and Matic's conduct, the Plaintiff, has endured pain, suffering, mental anguish, physical injury, has incurred past medical expenses, embarrassment, humiliation, loss of self-esteem damage to reputation, and may incur future medical expense and pain and suffering.

## SECOND CLAIM FOR RELIEF: BATTERY

41. Plaintiff incorporates each and every allegation in paragraphs 1-40 above, into this, his second claim for relief, as if fully stated herein.

42. Defendants Smith, Reyes, Bonomelli and Matic each took action resulting in physical contact with Plaintiff's body.

43. Defendants Smith, Reyes, Bonomelli and Matic each intended to make physical contact with Plaintiff, or knew physical contact would probably occur with Plaintiff's body.

44. The contact Defendants made to Plaintiff's body was harmful or offensive.

45. A reasonable police officer in the position of Defendants Smith, Reyes, Bonomelli and Matic would have known that such conduct violated clearly established law.

46. As a result of Defendants conduct, Plaintiff suffered personal injuries and sustained damages.

47. As a direct result of the Defendant Smith, Reyes, Bonomelli and Matic's conduct, the Plaintiff, has endured pain, suffering, mental anguish, physical injury, has incurred past medical expenses, embarrassment, humiliation, loss of self-esteem damage to reputation, and may incur future medical expense and future pain and suffering.

## THIRD CAUSE OF ACTION: CIVIL CONSPIRACY

48. Plaintiff incorporates each and every allegation contained within paragraphs 1-47 above, into this, his Third Cause of Action, as if fully set forth herein.

49. Members of Pueblo's Police department, including Defendants Smith, Reyes, Bonomelli and Matic each agreed, by words or conduct, to accomplish an unlawful goal or accomplish a goal through unlawful means. This occurred when reports and affidavits with intentionally false and mis-stated facts of the incident involving the altercation with Plaintiff were created which intentionally and falsely described the facts leading up to the altercation with the Plaintiff, intentionally failed to include all material facts to accurately reflect how the incident with Plaintiff occurred-and these false descriptions were then published in the Pueblo Chieftain newspaper.

50. The officers, including though not limited to Defendants Smith, Reyes, Bonomelli and Matic each performed one or more unlawful acts to accomplish the goal, or, one or more acts were performed by the Defendants to accomplish the unlawful goal. This occurred when official reports and affidavits with intentionally false and misstated facts of the incident involving the altercation with Plaintiff were created which intentionally and falsely described the facts leading up to the altercation with the Plaintiff in reports and affidavits, and intentionally failed to include all material facts to accurately reflect how the incident with Plaintiff occurred.

51. A reasonable police officer in the position of the Pueblo Police officers, including Defendants Smith, Reyes, Bonomelli and Matic would have known that such conduct violated clearly established law.

52. The Plaintiff suffered injuries, damages and losses, the amount of which will be determined at trial. As a direct result of the Defendant Smith, Reyes, Bonomelli and Matic's conduct, the Plaintiff, endured pain, suffering, mental anguish, physical injury, embarrassment, humiliation, loss of self-esteem, damage to reputation, economic losses (related to Plaintiff's scholarship from Colorado State University-at Pueblo) and was deprived of his Constitutional right to a fair trial and/or meaningful access to the Courts and the equal protection of laws, which is in violation of 42 U.S.C. 1983.

53. The Plaintiff's injuries, damages and losses were caused by the acts members of the Pueblo Police department including though not limited to Defendants Smith, Reyes, Bonomelli and Matic performed to accomplish the goal.

**FOURTH CAUSE OF ACTION: OUTRAGEOUS CONDUCT**

54. Plaintiff incorporates each and every allegation contained within paragraphs 1-53 above, into this, his Fourth Cause of Action, as if fully set forth herein.

55. Pueblo Police officers including Defendants Smith, Reyes, Bonomelli and Matic, by pinning the unconscious Plaintiff to the ground, face first with his hands behind his back and Defendant Matic then administering multiple and sustained bursts/zaps from a police issued "taser gun" to various areas of Plaintiff's upper rear neck, near the back of Plaintiff's skull and body, while Plaintiff was unconscious and not actively aggressive, demonstrates an unreasonable, excessive and unnecessary use of force, and shows Defendants engaged in extreme and outrageous conduct.

56. Defendants Smith, Reyes, Bonomelli and Matic, and perhaps other Pueblo Police officers, by engaging in a civil conspiracy to intentionally and falsely misstate the facts of the incident involving the altercation with Plaintiff and intentionally and falsely describe the facts leading up to the altercation with the Plaintiff, engaged in extreme and outrageous conduct.

57. By engaging in racial profiling, the City of Pueblo, its police force and Defendants Billings, Smith, Reyes, Bonomelli and Matic engaged in extreme and outrageous conduct.

58. The conduct of Defendants which Plaintiff complains of was done recklessly or with the intent of causing the plaintiff severe emotional distress.

59. The conduct of Defendants caused the plaintiff to suffer severe emotional distress.

60. A reasonable police officer in the position of Defendants Smith, Reyes, Bonomelli and Matic would have known that such conduct violated clearly established law.

## **FIFTH CAUSE OF ACTION:** 42 U.S.C. § 1983

61. Plaintiff incorporates each and every allegation contained within paragraphs 1-60 above, into this, his Fifth Cause of Action, as if fully set forth herein.

62. On information and belief, Defendant Billings has authorized customs, practices or policies of the City of Pueblo Police Department which fails to provide the necessary and proper training on the appropriate use of reasonable, non-excessive force, and which fail to provide the necessary and proper training regarding the proper, safe, reasonable and constitutional use of taser/stun guns utilized by the City of Pueblo's Police Department.

63. On information and belief, the aforementioned customs, policies and practices of the City of Pueblo Police Department in paragraph 62 was the moving force behind Plaintiff's being tased by Pueblo Police in the unreasonable and unconstitutional manner alleged.

64. Customs, practices or policies of the City of Pueblo, authorized by Defendant Billings, allows police officers for the City of Pueblo to work together/collaborate in creating arrest reports, arrest affidavits and various other "post-incident" paperwork filled out by Pueblo Police, said paperwork containing mis-statements of fact or which do not contain all relevant, material facts to provide an accurate picture of encounters City of Pueblo Police officers have with citizens of Pueblo, Colorado.

65. On information and belief, the aforementioned customs, policies and practices of the City of Pueblo Police Department in allowing Police officers to collaborate and work together in creating the post-incident reports, and arrest affidavits, was the moving force in the creation of the official Pueblo Police position which contained mis-statements of fact, which did not contain all relevant, material facts, which falsely described the facts leading up to the altercation with the Plaintiff and which failed to include all material facts to accurately reflect how the incident with Plaintiff occurred to provide an accurate picture of the encounter City of Pueblo Police officers had with Plaintiff.

66. By following the custom, practice or policy implemented by Defendant Billings in relation to taser use and in relation to working together/collaborating with one another in the creation of all post-incident paperwork, including reports and arrest affidavits when creating the official Pueblo Police Department, Defendants Smith, Reyes, Bonomelli and Matic caused Plaintiff to be deprived of his right to be free of unreasonable searches and seizures in violation of the Fourth (4th) and Fourteenth (14th) Amendments of the United States Constitution.

67. Upon information and belief, it is a custom, practice or policy of the City of Pueblo to permit police officers to use of racial considerations and profiling in investigations and encounters with citizens of Pueblo.

68. By following the custom, practice or policy implemented that allows for and permits the use of racial considerations and profiling in investigations and encounters with citizens of Pueblo, the City of Pueblo, its police force, and Defendant Billings, Smith, Reyes, Bonomelli and Matic caused Plaintiff to be deprived of his right to be free from violations of rights guaranteed to Plaintiff under the United States Constitution and Fourteenth (14th) Amendment.

69. Upon information and belief, following the custom, practice or policy of engaging in racial profiling and/or utilizing considerations of racial characteristics was the moving force in the Plaintiff's deprivation of rights guaranteed under the United States Constitution and Fourteenth (14th) Amendment.

70. By following the custom, practice or policy implemented by the City of Pueblo and Defendant Billings, and by engaging in racial profiling and/or utilizing considerations of racial characteristics in investigating occurrences/incidents in

70. the City of Pueblo and approaching Plaintiff, Defendants were motivated by a discriminatory purpose and their actions had a discriminatory effect.

71. Upon information and belief, similarly situated individuals of a race different from Plaintiff's, could have been, but were not stopped, approached or questioned during the incident outside the Highest State establishment.

72. The customs, policies and practices highlighted in paragraphs 62-71 were a proximate cause of the violation of Plaintiff's constitutional and federal rights, privileges and immunities and laws of the United States, and have caused Plaintiff damages.

73. The actions of Defendants Billings, Smith, Reyes, Bonomelli and Matic, have deprived Plaintiff of his constitutional and federal rights, privileges and immunities and laws of the United States, and have caused Plaintiff damages.

74. By following the custom, practice or policy implemented by Defendant Billings and zapping Plaintiff multiple times in the back of the neck/base of the skull area and body with a taser, despite the fact that Plaintiff was not actively aggressive because Plaintiff had previously been rendered unconscious from a blow to the head issued by Defendant Reyes, and despite the fact Plaintiff had been pinned down on his stomach-with multiple officers on Plaintiff's back all while Plaintiff's hands were behind his back, the City of Pueblo, its police and Defendants Smith, Reyes, Bonomelli and Matic intentionally or with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of his right to be free of unreasonable searches and seizures and Plaintiff's right to be free from the application of unreasonable force, in violation of the Fourth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. 1983.

75. A reasonable police officer in the position of Defendants Smith, Reyes, Bonomelli and Matic would have known that zapping Plaintiff in the back of the neck/base of Plaintiff's skull and body, under the facts of this case, violated clearly established law.

76. By following the custom, practice or policy implemented by Defendant Billings and working together/collaborating/working in concert with one another in the creation of all post-incident paperwork, including reports and arrest affidavits, which contain mis-statements of fact, which did not contain all relevant, material facts, which falsely described the facts leading up to the altercation with the Plaintiff and which failed to include all material facts to accurately reflect how the incident with Plaintiff occurred to provide an accurate picture of the encounter City of Pueblo Police officers had with Plaintiff, Pueblo Police, including though not limited to Defendants Smith, Reyes, Bonomelli and Matic intentionally or with deliberate indifference and callous disregard of Plaintiff's rights, engaged in a civil conspiracy and deprived Plaintiff of Constitutional rights to a fair trial

and/or meaningful access to Courts and denied Plaintiff the equal protection of laws, in violation of the United States Constitution and 42 U.S.C. 1983.

77. A reasonable police officer in the position of Defendants Smith, Reyes, Bonomelli and Matic would have known that by not including into post-incident reports and arrest affidavits, all relevant, material facts to provide an accurate picture of encounters City of Pueblo Police officers have with citizens of Pueblo, Colorado, or by failing to accurately state how the encounter with Plaintiff occurred, or by failing to include all pertinent facts of the encounter in all post-incident reports and arrest affidavits, or by deliberately fabricating how the encounter with the Plaintiff occurred, violated clearly established law.

78. By following the custom, practice or policy of utilizing racial considerations and/or profiling implemented by the City of Pueblo, its police force and Defendant Billings, Defendants Smith, Reyes, Bonomelli and Matic intentionally or with deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of Constitutional rights to the equal protection of laws, in violation of the United States Constitution and 42 U.S.C. 1983.

79. A reasonable police officer in the position of the Pueblo Police officers who encountered Plaintiff, including Defendants Smith, Reyes, Bonomelli and Matic would have known that utilizing racial characteristics and/or profiling violated clearly established law.

80. Defendants Billings, Smith, Reyes, Bonomelli and Matic, were acting under color of law at all relevant times to the complaint in relation to the encounter with Plaintiff.

81. Defendants Billings, Smith, Reyes, Bonomelli and Matic's conduct exhibited a reckless or callous disregard of, or indifference to, the rights or safety of others, namely the Plaintiff.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants as follows:

a. Compensatory damages, including, though not limited to past and future pain and suffering, past and future mental anguish, past physical injury, past medical expenses and medical expenses in future, compensation for embarrassment, humiliation, loss of self-esteem, damage to reputation, and economic losses (related to Plaintiff's scholarship from Colorado State University-at Pueblo), the amount of which is to be determined at trial;
b. Declaratory and injunctive relief in relation to the custom, policy and practice of City of Pueblo and its employees acting under color of law from using racial considerations and profiling when investigating and approaching citizens when the police are called to investigate;

c. Declaratory and injunctive relief in relation to the custom, policy and practice of City of Pueblo and its employees acting under color of law from using tasers despite the lack of resistance or aggression from the person who is tased;
d. Declaratory and injunctive relief in relation to the civil conspiracy engaged in by members of the City of Pueblo Police force;
e. Punitive damage pursuant to 42 U.S.C. § 1983;
f. Interest as allowed by law;
g. An award of Plaintiff's reasonable attorney fees and costs of this action, pursuant to 42 U.S.C. § 1988 and any other applicable law; and
h. Any further relief as to the Court seems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.

Respectfully submitted on this 14th day of August, 2007.

/S/

_____
Douglas Gradisar
Attorney for Plaintiff